IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VILAY BOUTSALATH,

    Plaintiff,                      No. CIV S-07-2748 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                  ORDER
_____/

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court denies plaintiff's motion for summary judgment or remand and grants the Commissioner's cross-motion for summary judgment.

I. BACKGROUND

    Plaintiff, born August 9, 1957, applied for disability benefits December 6, 2004, alleging disability since November 5, 2004, due to pain in her neck, back, shoulders and legs.[1]

---

[1] These dates and references are taken from the administrative decisions rather than plaintiff's application form and supporting statements. Plaintiff's initial application and disability report are not included in the administrative record. Rather, plaintiff's "Disability

1

Administrative Record ("AR") 11, 43.

At the March 15, 2007 hearing before administrative law judge ("ALJ") Mark C. Ramsey, plaintiff testified, with the assistance of a translator and represented by counsel, that she was forty-nine years old, divorced since 1995, and has four children whose ages range from 21 to 29. AR 136. Plaintiff testified that she came to the United States from Laos in 1986. She stated that she went to school for five years in Laos, and studied English for three years in the United States. AR 137. Plaintiff became a United States citizen in 1996, and has a driver's license. She receives general assistance and food stamps, and lives with her children. AR 138-139.

Plaintiff testified as follows about her past work. She first tested computer units, which required standing, and lifting up to 50 pounds. She next worked as a sorter, stuffing envelopes in a seated position, without significant lifting requirements. Plaintiff next worked as a machine operator for a soup company, a seasonal job requiring standing, and lifting up to 25 pounds. She next worked filling customer orders, a job requiring standing, and lifting up to 30 pounds. AR 139-141. Plaintiff left her last job on November 5, 2004, after being hit by a car in the employee parking lot. Plaintiff stated that she was knocked down and has thereafter had low back pain with left leg pain and numbness. AR 141-142, 143. *See generally*, AR 66-70.

Plaintiff testified that her regular household chores includes cooking two meals a week, and changing the sheets on her bed once a month. Plaintiff stated that she grocery shops weekly (her friend takes her), and goes to the Buddhist Temple once a month, for three-and-a-half hours, to provide food to the monks. Plaintiff testified that her children do the laundry, vacuum and mop the floors. Plaintiff does not do any yard work. Asked if she takes walks for exercise, plaintiff stated that she walks inside her house every day for up to one hour; she walks for four or five minutes, stops for ten minutes, and sometimes sits down. AR 146, 160-161. Plaintiff

Report – Appeal," is twice included, AR 52-58, 59-65.

also watches some TV, the news, and lies down. AR 143-146, 149.

Plaintiff described her low to middle back pain as "dull," and stated that the pain daily moves to her shoulders and neck, and can last all day. She also has migraines, twice a week, that last four or five hours. AR 149-152. The headaches affect plaintiff's vision, which will last for the whole day, and she feels tired and dizzy. AR 157-158. She treats her headaches by massaging Vick's on her temples, and lying down. AR 151-152. She also takes medicine, but it makes her feel tired because it is too strong. AR 159. Her neck and shoulders usually hurt when she has headaches. AR 152. She also gets numbness in her shoulders. AR 153.

Plaintiff testified that she sleeps poorly three times a week, which makes her feel worse in the morning. On other mornings, she feels well but becomes tired and experiences pain by the afternoons. AR. 153. When plaintiff has difficulty sleeping, it is because she is "thinking too much about my life." AR 154. She has tried "stress medicine" and sleep medicine, but can only take these sometimes because they make her feel tired and nervous. *Id*. Plaintiff testified that she generally sleeps three hours a night, then sits through the rest of the night. She takes two or three naps a day, 15-30 minutes each. AR 150, 157.

At the hearing, the ALJ went through the list of plaintiff's medications, and identified Ferro-sulfate (iron supplement), Loratadine (for allergies), Patanol (eye drops for allergies), Neopolymycin (ear drops), Soma (a muscle relaxant), and Tramadol (for pain).[2] AR 147-149, 154-156; *see also* AR 55, 74. Plaintiff takes the pain medication and muscle relaxant on an as-needed basis, about three times a week each, but at different times. The medications make plaintiff feel tired and nervous. AR 159-160. For her back pain, plaintiff also uses a heating pad, which helps for an hour. AR 156.

////

////

---

[2] Ultram, generally known as Tramadol, is "a centrally acting synthetic opioid analgesic." Physicians' Desk Reference ("PDR"), 63rd ed. (2009), at p. 2428.

3

Plaintiff testified that she can stand for 10 to 15 minutes, sit for 10 to 20 minutes, and that sitting is more painful than standing. AR 161. She testified that she can occasionally lift five pounds. AR 162.

The ALJ issued a decision on July 25, 2007, finding that plaintiff is not disabled.[3] AR 11-18. The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since November 5, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: history of anemia and lower back pain due to strain (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

[3] Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146, n. 5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work. In particular, the claimant can lift, carry, push, and pull 50 pounds and 25 pounds frequently. The claimant can also sit, stand and walk without restriction for six to eight hours per day.

6. The claimant is capable of performing past relevant work as an order filler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2004 through the date of this decision (20 CFR 404.1520(f)).

## II. ISSUES PRESENTED

Plaintiff contends that the Commissioner erred by (1) rejecting the opinion of plaintiff's treating physicians, and (2) concluding that plaintiff can perform her past relevant work.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

IV. <u>MEDICAL EVIDENCE</u>

    A. <u>TREATMENT HISTORY</u>

        1. <u>DR. HUNG HOANG</u>

Dr. Hung Hoang, M.D., was plaintiff's primary treating physician from September 28, 2004 to April 23, 2007. AR 108-132. Dr. Hoang treated plaintiff after she was hit by car on November 5, 2004. On November 10, 2004, Dr. Hoang saw plaintiff for her complaints of neck, back and joint pain; he prescribed Advil, and heat, and instructed plaintiff to remain off work until November 12, 2004. AR 131. On November 15, 2004, plaintiff stated that her neck pain was better, but she continued to have back pain, left knee pain, and pain and numbness in her left thigh. Plaintiff was prescribed Advil. AR 130. On November 20, 2004, plaintiff complained of increased numbness in her left thigh, and continuing symptoms of pain in her back, neck, and left knee. Plaintiff was prescribed Elavil. AR 129. On December 17, 2004, Dr. Hoang instructed plaintiff to stay off work until January 17, 2005. AR 128.

Plaintiff was next seen by Dr. Hoang on April 4, 2005, and again on April 11, 2005. She reported that her car had been broadsided on April 3, 2005, and complained of neck and lower back pain, headache and dizziness, and pain in her left thigh. Dr. Hoang prescribed Motrin and refilled her prescription for Elavil. AR 127, 126. On June 22, 2005, plaintiff's symptoms were persisting, and Dr. Hoang added a prescription for Soma; he also instructed plaintiff to lift no more than 10 pounds at work. AR 125. On September 23, 2005, Dr. Hoang instructed plaintiff to lift no more than 10 pounds until December 27, 2005. AR 124. On December 19, 2005, Dr. Hoang again instructed plaintiff to limit her activities to light duty until March 200[6]. AR 122. Plaintiff's symptoms and Dr. Hoang's treatment were consistent on July 21, 2006. AR 120.

On September 8, 2006, plaintiff continued to complain of neck and lower back pain, and left side numbness, as well as sore throat and right ear pain. AR 121. Based on a hemoglobin reading of 5.6 (normal range is 12.0 to 16.0), plaintiff was admitted for emergency care at

| | |
|---|---|
| 1 | Methodist Hospital, where she received a transfusion of two units of red blood cells. AR 121, |
| 2 | 91-106. While hospitalized, plaintiff was diagnosed as follows by Dr. Hoang, who initially |
| 3 | noted plaintiff's complaints since 2004 of neck and back pain, and left thigh and side numbness: |

1. Severe anemia without evidence of bleeding.
2. History of chronic anemia with microcytosis;[4] rule out iron deficiency anemia versus thalassemia minor.[5]
3. History of chronic migraine headaches.
4. Hyponatremia.[6]

AR 104.

Plaintiff was discharged on September 9, 2006. AR 91. Subsequent hemoglobin readings were normal, 11.5 on October 26, 2006, and 11.8 on February 20, 2007. AR 117, 110.

Plaintiff's treatment with Dr. Hoang on September 21, 2006, AR 120, October 21, 2006, AR 119, and November 21, 2006, AR 118, were consistent in reflecting plaintiff's persistent complaints of neck and back pain, prescriptions of Soma, as well as Ferrous Sulfate, a new prescription for Ultram, and the newer diagnoses of iron deficiency anemia and microcytosis.

Dr. Hoang's remaining treatment records are dated February 20, 2007, AR 111, April 9, 2007, AR 109, and April 23, 2007, AR 108, and remain consistent, as do plaintiff's complaints.

2. DR. AUGUSTO SYCHULOK

Dr. Augusto Sychulok, M.D., who practices in the same office as Dr. Hoang, submitted a completed Medical Assessment of Ability to do Work-Related Activities (Physical), dated February 20, 2007. AR 86-89. Plaintiff testified that this date was the second time she had seen Dr. Sychulok, and that he asked her quantitative questions, e.g., how long she could sit and

---

[4] "Microcytosis," also known as "microthemia," is "a condition in which the erythrocytes are smaller than normal." Dorland's Illustrated Medical Dictionary (27th ed. 1988), at p. 1032.

[5] "Thalassemia minor" is a condition "in which hemoglobin A synthesis usually is retarded, is asymptomatic, but there is sometimes moderate anemia and splenomegaly ['enlargement of the spleen']." Id. at p. 1703, 1565.

[6] "Hyponatremia" is a "deficiency of sodium in the blood." Id. at p. 806.

7

stand. AR 162-163.

Dr. Sychulok accorded plaintiff a principal diagnosis of "Microcystic Anemia," of unknown cause, and a secondary diagnosis of "Fatigueability" and low back pain, due to an "old auto injury," referencing November 2004. AR 86. Based on medical findings of "weakness, fatigue, dizziness," AR 86, pursuant to a physical exam and plaintiff's history, AR 88, Dr. Sychulok opined that plaintiff could not perform the full range of sedentary work, AR 87, but that sedentary work (rather than "less than the full range of sedentary work") best described her residual functional capacity, AR 88, 89. Dr. Sychulok opined that plaintiff can walk less than one hour at a time, for a total of four hours a day; sit less than one hour at a time, for a total of four to five hours a day; that she can occasionally lift less than five pounds; and that she is restricted in her ability to climb, bend and stoop. AR 86-87. Dr. Sychulok opined that plaintiff was credible in assessing her low back pain as an "8" (on an ascending 10-point scale). AR 88. Dr. Sychulok also opined that plaintiff is easily confused and forgetful, depressed and suffering from insomnia. AR 87. He concluded, however, that plaintiff could improve her condition through physical and occupational therapy. AR 88.

### B. CONSULTATIVE EXAMINATION

On March 4, 2005, Dr. Rajeswari Kumar, M.D., at the request of the Commissioner, conducted an orthopedic examination of plaintiff, with the assistance of an interpreter. AR 75-79. Measurements of plaintiff's extremities and grip strength were normal; the range of motion of her extremities was normal; neurological findings were normal; there was no muscle spasm or tenderness of the cervical and lumbar spines, and the cervical spine revealed normal range of motion. The only findings of limitation involved the range of motion of plaintiff's lumbar spine, with "severe restrictions" in forward flexion, extension and lateral flexion. AR. 77, 78. Dr. Kumar opined, "[h]owever, in the presence of normal neurological findings and in the absence of tenderness or muscle spasm, such severe restriction could be attributed to the claimant's fear of bending forward. In addition, the claimant also has positive axial compression test, which may

suggest symptom magnification." AR 78. Dr. Kumar opined that plaintiff can nonetheless "lift 50 pounds occasionally and 25 pounds frequently. The claimant can do frequent bending and stooping activities. Standing, walking, sitting kneeling, climbing, and upper extremity activities are unlimited." AR 78.

### C. STATE AGENCY REVIEWS

On March 28, 2005, upon initial review, State Agency consultant Antoine Dipsia, M.D., found the medical evidence insufficient to establish a diagnosis or a finding of disability. AR 27, 28. Dr. Dipsia relied on the consultative opinion of Dr. Kumar to conclude that plaintiff's subjective complaints were not credible and that she had no significant limitations. AR 83-84.

On July 27, 2005, upon reconsideration, State Agency consultant Thien Nguyen, M.D., reviewed plaintiff's records and concluded that her "Sprains and Strains – All Types," were not disabling. AR 25, 26. Dr. Nguyen found that plaintiff's subjective complaints were disproportionate to the objective findings, gave little weight to the examining physician for lack of objective findings, and concluded that plaintiff did not have a severe impairment, AR 81-82.

## V. ANALYSIS

### A. ALJ'S RELIANCE ON CONSULTATIVE EXAMINER

Plaintiff contends that the ALJ improperly rejected the opinions of her treating physicians, Dr. Hung Hoang, whose records encompass plaintiff's treatment from September 28, 2004 to April 23, 2007, AR 108-132, and Dr. Augusto Sychulok, who practices in the same office as Dr. Hoang, but whose only record is a completed Medical Assessment of Ability to do Work-Related Activities (Physical), dated February 20, 2007, AR 86-89. The ALJ rejected these opinions in favor of the conclusions of orthopedic consultative examiner, Dr. Rajeswari Kumar.

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an

9

individual, than the opinion of a non-treating professional. *See id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. *See Pitzer v. Sullivan,* 908 F.2d 502, 506, n. 4 and related text (9th Cir.1990); *see generally,* 20 C.F.R. § 416.927.

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests of independent clinical findings). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a finding. *See Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. *See Lester*, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *See id.* at 831. The Commissioner need not give any weight to a conclusory opinion supported by minimal clinical findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (rejecting treating physician's conclusory, minimally supported, opinion); *see also Magallanes,* 881 F.2d at 751.

////

Finally, the Commissioner is authorized to accord greater weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 416.927(d)(5).

The ALJ's decision met each of these requirements. The ALJ gave specific and legitimate reasons for relying on the independent clinical findings of Dr. Kumar, a specialist in "Physical and Rehabilitative Medicine" and "Pain Medicine." Dr. Kumar's opinion was based on his own objective findings upon examining plaintiff, both orthopedically and neurologically, in contrast to the absence of objective findings by Dr. Hoang and Dr. Sychulok's "medical findings" of "weakness, fatigue, dizziness." The court quotes at length the relevant findings of the ALJ, which are specific and detailed, apply the correct legal standards and are supported by substantial evidence in the record:

> In reaching the determination of the claimant's residual functional capacity, the undersigned accorded significant weight to the findings of the consultative examiner. The assessment that the claimant retains the ability to perform medium work provided by Dr. Kumar is consistent with the remainder of the record which fails to document [] significant clinical findings to substantiate the claimant's contention that she is disabled. Despite allegations that she suffers from disabling neck and back pain, the claimant has received conservative treatment consisting of pharmacological remedies. However, she has not required narcotic pain medications and progress notes relate the claimant's pain has been relieved or reduced by a medication regimen of Elavil, Soma and Motrin. (Exhibit 5F). Further, there is no evidence of any significant physical findings on examinations. Progress notes from her treating provider show evidence of cursory physical examinations but no significant findings are mentioned in the treatment records. The undersigned notes that no x-rays of the lumbar or cervical spine have been performed by her treating providers and during the consultative examination the only physical finding was limited motion of the spine that the examiner indicated was volitional on the part of the claimant. Dr. Kumar reported there was no evidence of lumbar or cervical tenderness, muscles spasms or neurological deficits. Further, despite her complaints of joint and total body pain, motion of the joints of the upper and lower extremities was normal and there was no evidence of joint pathology or other findings on examination. There is no record of any diagnostic testing of the joints or extremities. Although the record reflects the claimant required treatment for severe anemia in September 2006, there is no evidence of any continuing anemia or symptoms related to anemia. However, since the claimant has a history of anemia, the undersigned finds that a limitation to medium work is warranted as she should avoid heavy lifting in case of a further episode of anemia. Thus, the limited physical findings and conservative treatment regimen support Dr. Kumar's assessment that the claimant retains the ability to perform medium work and his opinion is accepted.

|   |   |
|---|---|
| 1 | In making the foregoing conclusions, the undersigned considered the functional assessment completed by Dr. Augusto Sychukok dated February 20, 2007 in accordance with Social Security Ruling 96-2p. Dr. Sychukok indicated the claimant had a principal diagnosis of microcytic anemia with a secondary diagnosis of fatigue associated with lower back pain and he determined the claimant could not perform even sedentary work on a sustained basis. (Exhibit 3F). While the undersigned considered this assessment, the undersigned could not afford any weight to the conclusions for the following reasons. First, Dr. Sychukok was not the claimant's primary treating physician during the period under consideration. In fact, the claimant testified she had only seen Dr. Sychukok on two occasions and she could not recall how Dr. Sychukok came to the conclusions he reported in his functional assessment. While the undersigned notes a physician could be considered a treating physician after only one visit, in this case, Dr. Sychukok issued an opinion that the onset of her limitations occurred in November 2004. However, Dr. Sychukok was not the treating physician at that time or for the majority of the time under adjudication. Therefore, his assessment is not based upon any direct knowledge on his part of the claimant's abilities as he was not the treating physician. The record reflects that Dr. Hoang has been the claimant's treating physician during the majority of the time under consideration. The undersigned notes that the claimant's treating physician, Dr. Hoang, reported functional abilities in contract to those reported by Dr. Sychukok. Dr. Hoang indicated in progress notes from June and September 2005 that the claimant was limited to lifting no more than ten pounds while Dr. Sychukok concluded the claimant could occasionally lift and carry less than five pounds. (Exhibit 5F, pgs. 18, 19). Dr. Hoang also reported in December 2005 the claimant was limited to light duty until at least March 2006, which is contrary to the report of Dr. Sychukok. (Exhibit 5F, p. 16). Moreover, while Dr. Sychukok described weakness and dizziness associated with anemia as causing limitations, the only evidence of weakness and dizziness was prior to her admission for severe anemia in September 2006. Prior to September 2006 or thereafter, there is no evidence of severe anemia. Indeed, laboratory testing performed in 2007 showed no significant deficits or abnormalities. Additionally, while the physician indicates the claimant has described mental confusion and depression, there is no evidence of treatment for these complaints. Thus, since there are no objective findings to support his assessment and because his conclusions are contrary to those of the claimant's primary treating physician, the undersigned gave no weight to the functional capacity assessment completed by Dr. Sychukok. |
| 2 | As noted above, Dr. Hoang had limited the claimant to lifting ten pounds and he determined the claimant should be limited to light duty in December 2005. However, the restrictions expressed by Dr. Hoang were for temporary periods of time. There is no indication that Dr. Hoang considered the claimant totally disabled or precluded from all work activities. Thus, while the progress notes of Dr. Hoang were considered, his temporary limitations were given no weight to the determination of the claimant's permanent functional limitations. |

AR 14-15.

////

////

Each of plaintiff's concerns – that the ALJ did not consider that Dr. Sychukok worked in the same office with Dr. Hoang, and had access to plaintiff's treatment records; that Dr. Hoang never expressly rescinded the lifting limitations he accorded plaintiff; that Dr. Sychukok's report was prepared after plaintiff's hospitalization for anemia; that the ALJ did not adequately consider plaintiff's complaints of fatigue, dizziness and weakness due to anemia, both before and after her hospitalization; that the ALJ should have obtained additional information from Dr. Sychukok – was adequately addressed by the ALJ's carefully reasoned decision.

The only findings of the ALJ that are not unequivocally supported by the record are (1) that plaintiff "has not required narcotic pain medications," AR 14, and (2) that "no x-rays of the lumbar or cervical spine have been performed by her treating providers," AR 14. While the court addresses these matters, it is significant that plaintiff does not contest the ALJ's further findings that plaintiff's testimony of disabling pain and limitations was "not entirely credible," an analysis also thoroughly reasoned and well supported by the record. *See* AR 16.

With respect to medication, plaintiff was belatedly prescribed Ultram, generically known as Tramadol, in November 2006. AR 113, 118. While not a narcotic, it does have better analgesic qualities than Motrin and Advil. *See* n. 2, *supra*. However, there is nothing in Dr. Hoang's treatment notes to suggest that new clinical findings formed the basis for prescribing Ultram, or that plaintiff's reliance on the medication was different than the intermittent use of her other prescriptions. Plaintiff testified that she took no prescription medication more than three times a week. She would instead lie down and use a heating pad on her back, and rub Vick's on her temples. Failure to pursue available treatment options casts doubt on the sincerity of a claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling 96-7p. Thus, the court does not find significant this arguable inconsistency in the ALJ's summary of the medical record.

Similarly, although the ALJ was technically correct that "no x-rays of the lumbar or cervical spine have been performed by [plaintiff's] treating providers," AR 14, Dr. Kumar twice

13

noted plaintiff's statement that she had been receiving treatment from a chiropractor who took x-rays. AR 75, 78. The administrative transcript contains neither the treating records of a chiropractor, nor x-ray evidence, despite ample opportunity for plaintiff's counsel to submit them if they existed. Since the remainder of the record was neither inadequate nor ambiguous, it was not incumbent upon the ALJ to seek the evidence himself. *See, e.g., Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (an ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence). Thus, the court does not find significant the absence of objective evidence that may or may not be available, and that was noted only by the consultative examiner.

Accordingly, the court finds that the ALJ's reasons for relying on the independent clinical findings and opinion of Dr. Kumar, rather than the conclusions of plaintiff's treating physicians, were specific and legitimate, and supported by substantial evidence of record.

B. PAST RELEVANT WORK

Plaintiff next contends that the ALJ should have proceeded to the fifth step of the Commissioner's sequential analysis, and obtained the testimony of a vocational expert based on hypothetical questions that included plaintiff's nonexertional limitations of lifting no more than five to ten pounds, fatigue, dizziness, pain, and the need to lie down during the day.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the [Commissioner] to show that the claimant can do other kinds of work." *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987). Without other reliable evidence of a claimant's ability to perform specific jobs, the [Commissioner] must use a vocational expert to meet that burden. *Id.* at 1279. Here, however, use of a vocational expert serves no purpose where substantial evidence supports the finding that plaintiff has the capacity to perform her past work. Indeed, presenting hypothetical scenarios predicated on an inability to perform past work and asking a vocational expert to opine as to other work would be pointless. Hypothetical questions posed to the vocational expert must set

1 | out all the limitations and restrictions of the particular claimant, including, for example, pain and
2 | an inability to lift certain weights. *Id*. at 1280; *see also Desrosiers v. Secretary of Health and
3 | Human Services*, 846 F.2d 573, 578 (9th Cir. 1988). However, "[t]he testimony of a vocational
4 | expert 'is valuable only to the extent that it is supported by medical evidence.' The vocational
5 | expert's opinion about a claimant's residual functional capacity has no evidentiary value if the
6 | assumptions in the hypothetical are not supported by the record." *Magallanes v. Bowen*, 881
7 | F.2d 47, 756 (9th Cir.1989) (citations omitted).

For the reasons set forth above, the ALJ set forth specific and legitimate reasons, based on substantial evidence in the record, for discrediting the nonexertional limitations plaintiff realleges in this contention, and for concluding that plaintiff can perform her past relevant work, which required only light exertional demands. The ALJ's reasons are underscored by plaintiff's decision not to challenge the ALJ's finding discrediting plaintiff's subjective complaints Accordingly, the court finds no error in the decision of the ALJ to stop his analysis at step four, without submitting plaintiff's unsupported allegations of nonexertional impairments to a vocational expert.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and,

3. The Clerk is directed to enter judgment for the Commissioner and close the case.

IT IS SO ORDERED.

DATED: March 25, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE